IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF OKLAHOMA

GARY SCOTT MORELAND,
REBECCA JANE NICHOLS, individually, and,
on behalf of and as next friend of J.W.S.

       Plaintiffs,

v.

                                                 Case No. 4:20-cv-00366-WPJ-SH

BOARD OF COUNTY
COMMISSIONERS OF THE COUNTY
OF MAYES, a political subdivision,
CITY OF CHOTEAU, a political subdivision,
BRETT ALAN MULL, individually, and
KEISHA OBERG, individually,

       Defendants.

**MEMORANDUM OPINION AND ORDER GRANTING DEFENDANT MULL'S
MOTION FOR SUMMARY JUDGMENT AND QUALIFIED IMMUNITY**

THIS MATTER comes before the Court upon Defendant Brett Alan Mull's Motion for Summary Judgment. **Doc. 91**. Following local law enforcement officers' execution of a lawful search warrant at their residence in August 2017, Plaintiffs Gary Scott Moreland and Rebecca Jane Nichols, individually, and on behalf of Plaintiff Nichols' minor son, J.W.S., filed a petition (hereinafter, "the Complaint") under 42 U.S.C. § 1983 in Oklahoma state court against the Board of County Commissioners of Mayes County, City of Chouteau, Defendant Mull and officer Keisha Oberg. **Doc. 6-2**. Defendants removed the action to federal court. **Doc. 6**. Mull is the sole remaining defendant. *See* **Docs. 33, 47, 49, 54**.

Plaintiffs assert Defendant Mull's conduct during the search violated their Fourth Amendment right to be free from unreasonable seizure. Plaintiffs also seek to assert an additional, unpled state law claim for conversion. Defendant Mull asserts that he is entitled to qualified

immunity on Plaintiffs' § 1983 claim and argues that the Court should not consider Plaintiffs' unpled conversion claim. In the alternative, should the Court consider the conversion claim, Defendant Mull contends that he is immune under the Oklahoma Governmental Tort Claims Act.

Having reviewed the parties' pleadings and the applicable law, the Court finds that Defendant's motion is well-taken, and accordingly, GRANTS Defendant Mull's Motion for Summary Judgment.

### FACTUAL BACKGROUND

On August 29, 2027, the date of the disputed events, Plaintiffs "were in a dating relationship" and lived together in Chouteau, Oklahoma, along with Plaintiff Nichols' minor son, J.W.S. **Pet'n, Doc. 6-2, ¶¶ 3-4**. At approximately 7:00 a.m., Defendant Mull and Deputy Oberg, employees of the Mayes County Sherriff's Department, arrived at Plaintiffs' residence pursuant to a lawful search warrant obtained by Deputy Oberg. **Defs. St. of Undisputed Mat. Facts ("Def.'s SOF") ¶¶ 14, 15; Pls.' Resp. Br., Doc. 95, at 1.**[1] The warrant authorized the search of Plaintiffs' residence and any vehicles on the premises and its curtilage for methamphetamine, instrumentalities and paraphernalia associated with the sale and exchange of illegal narcotics, money associated with drug sale proceeds, telephone numbers, records indicating the sale of illegal narcotics, and letters and mail proving residency, and the seizure of such items. **Doc. 91-6.** Defendant Mull reviewed and was briefed on the warrant prior to the search. **Def.'s SOF ¶¶ 10-11.**

The parties dispute what happened during the search.[2] Plaintiffs allege that Defendant Mull

---

[1] Plaintiffs do not contest the validity of the warrant. *See, e.g.*, **Pls.' Resp. to Def.'s SOF, Doc. 95 at 4, ¶ 2**. The Court "take[s] this omission as a concession that the officers, including [Defendant Mull], entered the premises in reliance on a valid warrant." *Jenkins v. Wood*, 81 F.3d 988, 995 (10th Cir. 1996)

[2] As is apparent from the parties' differing versions of events, much of the parties' disagreement turns on whose version is credited. Because creditability determinations are the province of the factfinder, not the Court on summary judgment, the Court accepts Plaintiffs' version of disputed facts to the extent supported by record evidence. *See Est. of Bleck v. City of Alamosa*, 540 F. App'x 866, 869 (10th Cir. 2013).

threatened Plaintiff Moreland, "Tell me where the drugs are or we will tear the place up." **Pet'n ¶ 16.** Plaintiffs allege further that, in the course of the search, Defendants "removed virtually every item from plaintiffs' residence and buildings on the property[,] destroying all property." *Id.* ¶ 12. They also submit evidence that sounds of property being thrown could be heard from outside the house, and Plaintiffs contend that Defendant Mull and Deputy Oberg "bust[ed]" surveillance cameras to obscure what they were doing. **Pet'n ¶ 12; Pls.' Ex. 9, Doc. 95-9, Pls.' Ex. 10, Doc. 95-10.** Plaintiff Nichols' affidavit indicates that she observed Defendant Mull smashing and breaking the cameras with a rake. **Nichols' Aff., Pls.' Ex. 9, Doc. 95-9.**

Defendant Mull maintains that his "assignment was to secure the outer perimeter of the residence and monitor it." **Mull Decl., Def.'s Ex. 7, Doc. 91-7, ¶ 10.** At the outset of the search, Defendant Mull was stationed behind Plaintiffs' residence. *Id.* From his location at the back of the house, he claims "he did not see the entry team enter the residence or how many occupants were inside the home." **Def.'s SOF ¶ 19; Mull Decl. ¶ 11.** Shortly after their arrival, he "heard the entry team announce that the interior of the residence was secured." **Mull Decl. ¶ 11.** At that point, he "made [his] way to the front of the residence." *Id.* From there, he reports observing an "adult male subject (later identified as Scott Moreland) and a female subject (later identified as Rebecca Nichols) being detained." *Id.* He further maintains that he "was not involved in detaining either subject" and "did not see any other non-law enforcement individuals" while stationed at the perimeter of the house. *Id.*

Plaintiff Moreland represents that he was handcuffed outside and that Defendant Mull came outside and asked if he remembered him. **Doc. 95-4 at 4.** Moreland responded that he did not. *Id.* Plaintiffs allege that J.W.S., who has medical issues, including a heart condition, was made to wait in the police car during the search and suffered trauma as a result. *Id.* ¶ 15. Defendant Mull

recalls being "advised that the entry team had removed a juvenile male and relocated him to a safer place while the entry team finished clearing the residence." **Doc. 91-7 ¶ 11**. He alleges that he does not remember interacting "with any juvenile" during the search. *Id.*

While talking with officers outside, Defendant Mull states that he observed several video cameras attached to the exterior of the residence. He later observed that these cameras were "connected to a central screen inside on[e] of the bedrooms in the house." *Id.* **¶ 13.** To his recollection, Defendant Mull did not speak to either Plaintiff outside. *Id.* **¶ 12**. He then conducted a walkthrough of the residence. *Id.* **¶ 13.** He saw officers searching the residence "in a manner consistent with methods that were required to identify the sorts of contraband and drug paraphernalia reflected in the scope of the search warrant." *Id.* **¶ 14**.

The search resulted in the seizure of a Chevy Blazer that was confirmed stolen, a large zip-lock bag full of small pristine baggies, and a "fully operative surveillance system," including a monitor in the main bedroom and cameras "mounted on the outsides of the residence." **Doc. 91-23.**

### RULE 56 STANDARD

Summary judgment is warranted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 664, 670–71 (10th Cir. 1998). In so showing, the movant need not "negate the nonmovant's claim" but may instead "simply . . . point[] out to the court a lack of evidence for the nonmovant on an essential element of the nonmovant's claim." *Adler*, 144 F.3d at 671 (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 325 (1986)). "A party asserting that a fact cannot be or is genuinely disputed must support the assertion" with record evidence, including "depositions, documents, electronically stored information, affidavits

or declarations, stipulations . . . . admissions, interrogatory answers, or other materials" or by "showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1). To that end, "[i]f a party fails to properly support an assertion of fact or fails to properly address another party's assertion of fact as required by Rule 56(c), the court may . . . consider the fact undisputed for purposes of the motion" or "grant summary judgment if the motion and supporting materials—including the facts considered undisputed—show that the movant is entitled to it." Fed. R. Civ. P. 56(e). Ultimately, the inquiry is whether the competent evidence "presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251–52 (1986).

## 42 U.S.C. § 1983

"To prevail on a claim for damages for a constitutional violation pursuant to 42 U.S.C. § 1983, a plaintiff must establish the defendant acted under color of state law and caused or contributed to the alleged violation." *Jenkins*, 81 F.3d at 994. Mere presence during the relevant events is insufficient; rather, "the plaintiff must show the defendant personally participated in the alleged violation." *Id.* (citing *Bennett v. Passic*, 545 F.2d 1260, 1262–63 (10th Cir. 1976)).

## QUALIFIED IMMUNITY

"Qualified immunity changes the nature of summary judgment — requiring a 'different kind of review.'" *Burke v. City of Bartlesville*, No. 20-cv-244-WPJ-SH, 2024 WL 4508959, at *2 (N.D. Okla. Oct. 16, 2024) (quoting *Shepherd v. Robbins*, 55 F.4th 810, 815 (10th Cir. 2022)), *aff'd sub nom. Burke v. Pitts*, 157 F.4th 1326 (10th Cir. 2025), *pet'n for cert. filed*, No. 25-1062 (U.S. Mar. 2, 2026). "When a defendant asserts qualified immunity at the summary judgment stage, it is the plaintiff's burden to prove (1) the defendant violated his constitutional rights; and (2) the law was clearly established at the time of the alleged violation." *Soza v. Demsich*, 13 F.4th 1093,

5

1099 (10th Cir. 2021).

"Ultimately, Defendants do not bear the 'traditional burden of the movant for summary judgment' unless the Plaintiff is able to satisfy this two-part test." *Burke v. City of Bartlesville*, 2024 WL 4508959 at *2 (quoting *Gutteridge v. Okla.*, 878 F.3d 1233, 1239 (10th Cir. 2018)). That is because once asserted, the affirmative defense of qualified immunity "creates a presumption that the defendant is immune from suit." *Jarvis v. Liggett*, ---F.4th----, 2026 WL 1674796, at *5 (10th Cir. June 10, 2026) (citing *Crowson v. Wash. Cnty. Utah*, 983 F.3d 1166, 1178 (10th Cir. 2020)). Therefore, although the Court views disputed facts in the light most favorable to Plaintiffs, Plaintiffs must identify evidence in the record from which a reasonable jury could find both a constitutional violation and clearly established law. *Burke v. Regalado*, 935 F.3d 960, 1002 (10th Cir. 2019). Failure to establish either prong entitles the Defendant to qualified immunity. *Heard v. Dulayev*, 29 F.4th 1195, 1203 (10th Cir. 2022). The Court "has discretion to decide the order in which these two prongs should be addressed, and, when appropriate, does not need to address both." *Soza*, 13 F.4th at 1099.

"For purposes of qualified immunity, law is clearly established if Supreme Court or Tenth Circuit or the weight of authority from other circuits, would put reasonable officers in the defendants' position on notice they were violating the Fourth Amendment." *Id.* (citing *Carabajal v. City of Cheyenne*, 847 F.3d 1203, 1210 (10th Cir. 2017)). "Precedent need not be 'directly on point' so long as it places the 'statutory or constitutional question beyond debate.'" *Crane v. Utah Dep't of Corrs.*, 15 F.4th 1296, 1303 (10th Cir. 2021) (quoting *Mullenix v. Luna*, 577 U.S. 7, 11 (2015)). "Still, clearly established law must remain moored in a specific set of facts." *Id.* "The dispositive question is whether the violative nature of *particular* conduct is established, which means courts may not define clearly established law at a high level of generality." *Id.* (quoting

*Mullenix*, 577 U.S. at 12) (quotations omitted).

Here, Plaintiffs assert that while assisting in the execution of the search warrant, Defendant Mull removed and destroyed the property in their residence, including busting security cameras, and made J.S.W. wait in the police car while the search was underway. They assert that these acts exceeded the authority and scope of the search warrant, constituting an unlawful seizure in violation of the Fourth Amendment.

## ANALYSIS
### I.    Summary Judgment Evidence

The parties raise various evidentiary objections, some of which require resolution in order to clarify the universe of facts before the Court. "At the summary judgment stage, evidence need not be submitted 'in a form that would be admissible at trial.'" *Argo v. Blue Cross & Blue Shield of Kan., Inc.*, 452 F.3d 1193 (10th Cir. 2006). But the "content or substance of the evidence must be admissible." *Id.* (quoting *Thomas v. Int'l Bus. Machs.*, 48 F.3d 478, 485 (10th Cir. 1995)). The Court is not precluded from considering, for example, affidavits or declarations, discovery responses or "other materials" often excluded at trial due to the prohibition on hearsay where the evidence may ultimately be invoked at trial in an admissible form. Fed. R. Civ. P. 56; *Argo*, 452 F.3d at 1199; *Johnson v. Weld Cnty.*, 594 F.3d 1202, 1210 (10th Cir. 2010). The Court may not accept hearsay statements solely on the basis that they are contained within the summary judgment record. Instead, the Court must put aside hearsay when the opponent properly objects to its use and the proponent points to no applicable exception to the hearsay rule. *Montes v. Vail Clinic, Inc.*, 497 F.3d 1160, 1176 (10th Cir. 2007).

Defendant Mull objects to Plaintiffs' evidence of his prior conviction, **Pls.' Ex. 1, Doc. 95-1**, and a petition and affidavit from another case involving Deputy Oberg, **Pls.' Ex. 2, Doc. 95-2**, on the ground that they are being offered solely to attack the witnesses' credibility. **Doc. 97 at 1–**

7

**2**. The Court agrees. Plaintiffs appear to offer this evidence for no purpose other than creating a credibility question — an issue that becomes relevant only if the case proceeds to trial. *See Seamons v. Snow*, 206 F.3d 1021, 1026 (10th Cir. 2000). Because the evidence does not bear on any factual inquiry at hand, Plaintiffs cannot rely on Exhibits 1 and 2 to satisfy their summary judgment burden.

Defendant Mull also objects to Plaintiffs' exhibits 5, **Pls.' Ex. 5, Doc. 95-5**, and 7,[3] **Pls.' Ex. 7, Doc. 95-7**, on the grounds that they are unsworn, unsigned and undated. **Doc. 97 at 3**. These exhibits appear to be informal statements purportedly authored by Plaintiffs. Plaintiff Moreland's statement is dated simply "January 2018" and Plaintiff Nichols' statement is dated January 12, 2018. Neither statement is sworn or contains a statement pursuant to 28 U.S.C. § 1746. It is well-established that "unsworn statements do not qualify as affidavits and are not to be considered by the Court when ruling on a motion for summary judgment." *In re Hobbs*, No. 22-103330-JDL, 2023 WL 3689632, at *4 (Bankr. W.D. Okla. May 26, 2023) (citing *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 158 n. 17 (1970)). Plaintiffs make no attempt to otherwise demonstrate their reliability. Therefore, the Court disregards Plaintiffs' Exhibits 5 and 7.

Plaintiffs object to Defendant Mull's reliance on law enforcement reports as inadmissible hearsay. **Doc. 95 at 2–4.** Without articulating which excerpts, or, at minimum, exhibits, Plaintiffs seek to exclude, the objection is overbroad. Police reports are often admissible as falling within the public records exception to the hearsay rule. Fed. R. Evid. 803(8); *see, e.g.*, *United States ex rel. Barrick v. Parker-Migliorini Int'l, LLC*, 79 F.4th 1262, 1273–74 (10th Cir. 2023). Accordingly, the mere fact that a statement appears in a police report does not render it inadmissible. Whether

---

[3] Defendant's Reply Brief refers to "Exhibits 5 and 8." Based on the context, however, the Court understands the reference to Exhibit 8 to be a typographical error. Exhibit 8 consists of excerpts from Plaintiff Moreland's deposition, whereas Exhibits 5 and 7 appear to be the statements challenged in the reply. *See* **Doc. 97 at 3**.

a particular statement within an otherwise admissible police report constitutes hearsay depends on the purpose for which it is offered, and such reports may contain information that is not hearsay, falls within an exception, or could be presented in admissible form at trial. Plaintiff does not identify any specific statement on which reliance would be improper. The Court therefore overrules the objection to the extent it seeks exclusion of the reports in their entirety.

### A. Plaintiffs' Affidavits

Defendant Mull objects to Plaintiffs' self-authored affidavits created after Plaintiffs were deposed on the theory that they are presented solely for the purpose of creating a sham factual issue. **Nichols Decl., Pls.' Ex. 9, Doc. 95-9; Moreland Decl., Pls.' Ex. 10, Doc. 95-10**.[4] Defendant points to inconsistencies between statements Plaintiffs made during their depositions in January 2025 and their affidavits in April 2025.

Although it is the general rule that credibility assessments must be withheld at summary judgment, the court may disregard a "contrary affidavit" if it is apparent that it "constitutes an attempt to create a sham fact issue." *Franks v. Nimmo*, 796 F.2d 1230, 1237 (10th Cir. 1986). This is sometimes referred to as the "sham affidavit doctrine." *Whyte Monkee Production, LLC v. Netflix, Inc.*, 601 F.Supp.3d 1117, 1130 (W.D. Okla. 2022). An affidavit rarely falls within this exception and "may not be disregarded [simply] because it conflicts with the affiant's prior sworn statements." *Burns v. Bd. of Cnty. Com'rs of Jackson Cnty.*, 330 F.3d 1275, 1281 (quoting *Franks*, 796 F.2d at 1237); *see Franks*, 796 F.2d at 1237 (concluding that it was "one of those unusual cases in which the conflict between the testimony and the affidavit raises only a sham issue"). The Tenth

---

[4] Plaintiff Moreland's affidavit appears to be verified and signed on April 24, 2025. **Doc. 95-10**. The date of Plaintiff Nichols' affidavit, if it is dated, is obscured due to poor image quality but the verification and signature appears to have been completed sometime in April 2025. In any event, it is immaterial on what date in April the statements were made because they were undisputedly created several months after Plaintiffs were deposed. *See* **Doc. 95-8 (Moreland Dep. Tr. dated Jan. 21, 2025); Doc. 91-2 (Nichols Dep. Tr. dated Jan. 8, 2025).** Although the cover page of Plaintiff Nichols' deposition transcript refers to a Rebecca Jane Moreland, there appears no question that the deposition testimony belongs to Plaintiff Nichols.

Circuit has established certain "[f]actors relevant to the existence of a sham fact issue," including "whether the affiant was cross-examined during his earlier testimony, whether the affiant had access to the pertinent evidence at the time of his earlier testimony or whether the affidavit was based on newly discovered evidence, and whether the earlier testimony reflects confusion which the affidavit attempts to explain." *Franks*, 796 F.3d at 1986.

Defendant points to excerpts from Plaintiff Nichols' deposition at which she testified about her knowledge and recognition of Defendant Mull. Plaintiff Nichols testified that she met Mr. Mull only once — during the search, was uncertain if she would be able to identify him if presented with a photo, and the reason she knew it was him going in and out of the house and yelling at Plaintiff Moreland was Moreland's telling her so after the fact. **Nichols Dep. Excerpts, Doc. 97-1 at 55:3-7.** Nichols also testified regarding her knowledge of Defendant Mull, "I could probably pick him out" and "I know what he looks like, but that morning, he wasn't in uniform." *Id.* **at 55:13-16**. When asked what Mull was wearing, Nichols testified "[h]e had on pants and a shirt" and when asked what color his pants were, Nichols said, "I couldn't tell you. I think he had on jeans." *Id.* **at 55:18-20**. When asked about his appearance, Nichols testified "Thin hair on top. He was taller than me. That's about the best I can give you." *Id.* **at 55:23–56:1**.

Defendant Mull asserts that that testimony conflicts with Plaintiff Nichols' later assertions in her affidavit that she saw him go in and out of the house, and when he was in the house, she "could hear loud noises that sounded like property being thrown." **Doc. 97-1 at 1**; **Nichols' Aff., Pls.' Ex. 9, Doc. 95-9 ¶ 1**. Mull also points to Nichols' affidavit testimony that when Mull came back outside, "the noise would stop" and that Nichols "saw through the window property being thrown." **Doc. 95-9 ¶ 1.** But the Court does not read the cited testimony as contradictory. An inability to name the officer at the time of the search and a foggy recollection of what he was

wearing in a deposition eight years after the relevant events does not conflict with a recollection that the officer Nichols later identified as Mull walked in and out of the residence and that she heard loud noises at points during the search. The cited testimony does not foreclose the possibility that Plaintiff Nichols subsequently learned Defendant Mull's identity and later identified him as one of the officers she observed. The sham affidavit doctrine does not call for exclusion of the cited portions of Plaintiff Nichols' testimony.

Defendant also points to Plaintiff Nichols' testimony that her knowledge about Defendant Mull's involvement was limited to her awareness that "he was present at the scene" and that she "just saw him going in and out of the house" to undermine her later declaration that she "saw Mull break the cameras outside by smashing them with a rake." **Doc. 97-1 at 3; Nichols Dep. Excerpts Doc. 97-1 at 104:8-10;** *cf.* **Nichols Aff., Doc. 95-9 ¶ 2.** At her deposition, Plaintiff Nichols testified, regarding "the damage to the security cameras and set up": "They weren't there. I don't know." **Doc. 97-1 at 3; Nichols Dep. Excerpts, Doc. 97-1 at 114:12-17.**

To be sure, a comparison of Plaintiff Nichols' deposition testimony to her later affidavit reveals inconsistencies. If Nichols did observe Defendant Mull smash the cameras, that begs the question why she did not mention that at the deposition. At the same time, the Court cannot conclude that the statements are so directly contradictory as to support an inference the later affidavits are a sham. The answer to the question about her observations concerning Defendant Mull's conduct could be read as, "I didn't see what he was doing inside the house; I only saw him going in and out." Her response to the question about the damage to the security cameras could be read as stating, "I don't know the extent of the damage to the camera system" or " I don't know what happened to the cameras after the search." When interpreted in these ways (and it is not the Court's role to credit one plausible reading over another at this stage), neither statement directly

contradicts Nichols' affidavit testimony.  Defendant Mull has not established that the sham affidavit doctrine warrants exclusion of Plaintiff Nichols' affidavit, **Nichols Aff., Pls.' Ex. 9, Doc. 95-9,** from the summary judgment record.

Defendant Mull also asserts the sham affidavit doctrine precludes consideration of Plaintiff Moreland's declaration that he looked at a photograph of Defendant Mull after his deposition and learned that Defendant Mull was the person who took his lighter and that during the search he saw Defendant Mull walk in and out of the house and heard loud noises that sounded like property being thrown when Mull was inside the house.  **Moreland Aff., Pls.' Ex. 10, Doc. 95-10**. Defendant Mull cites to portions of Plaintiff Moreland's testimony indicating that Moreland met Mull for the first time during the execution of the search warrant and that he did not know it was Mull who took his lighter or kicked in the door at the time of the search.  **Reply Ex. 1, Doc. 97-1 at 3–7; Moreland Dep. Excerpts, Doc. 97-1 at 93:16-94:9; 104:18-105:20**.  But the Court does not read Plaintiff Moreland's statements as contradictory.  That Moreland was unable to identify Mull contemporaneously does not foreclose the possibility that he was later able to do so after having been shown a photograph.  Therefore, the sham affidavit doctrine does not clearly warrant striking Plaintiff Moreland's statements.

In sum, the summary judgment record includes Plaintiffs' affidavits.  **Pls.' Ex. 9, Doc. 95-9; Pls.' Ex. 10, Doc. 95-10**.  To the extent any specific objections are not addressed herein, the Court has considered only evidence that would be admissible at trial or could be presented in admissible form.

## II.    Fourth Amendment Claims

The Fourth Amendment protects one's right "to be secure in their persons, houses, papers and effects, against unreasonable searches and seizures."  U.S. Const. amend. IV.  A Fourth

Amendment seizure includes the detention of a residence's occupants during a search of the residence.  *See United States v. Ritchie*, 35 F.3d 1477, 1482 (10th Cir. 1994).

A search conducted pursuant to a warrant is presumptively reasonable.  *See United States v. McKneely*, 6 F.3d 1447, 1454–55 (10th Cir. 1993).  Officers are granted discretion in determining how to execute the search, though their actions must remain within the bounds of reasonableness.  *See Dalia v. United States*, 441 U.S. 238, 257 (1979); *Lawmaster v. Ward*, 125 F.3d 1341, 1349 (10th Cir. 1997); *Soza*, 13 F.4th at 1099 ("The 'touchstone' of any Fourth Amendment analysis is the reasonableness of the police conduct.").  A search conducted pursuant to a lawful warrant may violate the Fourth Amendment where property is excessively or unnecessarily destroyed.  *United States v. Ramirez*, 523 U.S. 65, 71 (1988).  Officers are not required, however, to conduct the search in a manner that avoids all property damage, and some damage may be incident to a lawful search.  *See Ramirez* 523 U.S. at 71; *Caviness v. Johnson*, 614 F. Supp. 2d 1246, 1250–51 (E.D. Okla. 2008) (citing *Liston v. Cnty. of Riverside*, 120 F.3d 965 (9th Cir. 1997)).  "Whether an officer's conduct is reasonable is a highly fact-dependent inquiry that can only be determined on a case-by-case basis."  *Lawmaster*, 125 F.3d at 1349.  The court reviews the "totality of the circumstances to determine whether the officer's conduct was reasonably necessary to effectuate the warrant's purposes."  *Id.* (citing *United States v. Perdue*, 8 F.3d 1455, 1462 (10th Cir. 1993)).

When executing a search warrant, law enforcement officers "may take reasonable action to secure the premises and to ensure their own safety and the efficacy of the search."  *Los Angeles Cnty., Cal. v. Rettele*, 550 U.S. 609, 614 (2007).  And "[a] warrant to search for contraband founded on probable cause implicitly carries with it the limited authority to detain the occupants of the premises" while the search is carried out.  *Mich. v. Summers*, 452 U.S. 692, 705 (1981).  Such authority is "categorical" and is not dependent on the "quantum of proof justifying detention or

the extent of the intrusion to be imposed by the seizure." *Muehler v. Mena*, 544 U.S. 93, 98 (2005) (citing *Summers*, 452 U.S. at 705 n.19).   The personal intrusion caused by detention for the duration of a lawful search is generally outweighed by "three legitimate law enforcement interests": 1) "preventing flight in the event that incriminating evidence is found"; 2) "minimizing the risk of harm to the officers"; and 3) "facilitating 'the orderly completion of the search.'" *Muehler*, 544 U.S. at 98 (quoting *Summers*, 452 U.S. at 702–03).   The detention of minors may involve unique concerns, however, is ultimately examined under the same reasonableness standards governing the detention of adults. *See Gordon v. Louisville/Jefferson Cnty. Metro Gov't*, 486 F. App'x 534, 542 (6th Cir. 2012) (citing *Franklin v. Foxworth*, 31 F.3d 873, 876 (9th Cir. 1994)).

### A.  Detention of J.W.S.

Plaintiffs assert that J.W.S.'s detention in the police car during the search constituted an unreasonable seizure.  **Pet'n ¶¶ 15; 17; Doc. 95 at 1–2**.  The record indicates that J.W.S. was in his bedroom when the officers arrived, Plaintiff Nichols picked him up, and officers placed him in the back of the police car, where he remained for about an hour until his grandmother came and picked him up.  **Doc. 104 (Supp. Pls.' Ex. 12) at 6, Moreland Depo at 102:11-21; J.W.S. Dep., Doc. 91-12 at 10:21-11:4**.  J.W.S. testified that the officers gave him an iPad, on which he watched Netflix while he waited in the car.  **J.W.S. Dep., Doc. 91-12 at 11:10-18.**  Although Plaintiff Nichols testified that Defendant Mull was not the officer who put J.W.S. in the car, Plaintiff Moreland describes that he told Defendant Mull not to keep J.W.S. in the back of the police car because of his medical condition but was ignored.  **Nichols Dep. at 114:20-22**; **Pls.' Ex. 4, Doc. 95-4, at 5.**  Plaintiffs allege that as a result of this event, J.W.S. suffered anxiety, worsened by preexisting medical conditions and manifesting as heart and chest pains.  **Ex. 12 at 4.**

Plaintiffs have failed to put forth evidence suggesting that Defendant Mull participated in an unlawful detention of J.W.S.  Even assuming that requiring J.W.S. to remain in the vehicle during execution of the search constituted a seizure, Plaintiffs have not identified authority clearly establishing that such conduct was unreasonable under the circumstances.  In addition, the record presents no evidence that Defendant Mull was personally responsible for the decision to keep J.W.S. in the vehicle.  *See* **Doc. J.W.S. Dep., Doc. 95-12 at 10:2-20; Mull Decl. ¶ 11;** *see Jenkins*, 81 F.3d at 994 (a § 1983 violation requires personal participation); *Gordon*, 486 F. App'x at 54 (affirming summary judgment of qualified immunity in part because the officer responsible for the children's detention was not identified).

The most concerning evidence regarding Defendant Mull's conduct in relation to J.W.S. is his alleged failure to act on Plaintiff Moreland's request that J.W.S. not be kept in the car due to his medical condition.  *See* **Doc. 95-4 at 6.**  But the record does not indicate at what point in the search that request was made nor does it suggest that the conditions within the vehicle made it perceptibly unsafe for a minor to remain in the backseat.  Moreover, while it may not have been necessary to place J.W.S. in the police car, as opposed to another location outside the house, Plaintiffs do not offer any authority establishing that doing so is unreasonable.  Further, there is no evidence that the officers unreasonably prolonged the search or kept J.W.S. in the car after the search was completed.  To the contrary, J.W.S.'s grandmother picked him up after approximately one hour, during which he entertained himself by viewing Netflix on an iPad.  Although J.W.S.'s alleged diagnosis with PTSD certainly is serious, the record does not indicate that J.W.S. showed signs of distress at the time of the incident such as would have alerted the officers that the purposes fulfilled by having him wait in the car — such as protecting his safety and facilitating an efficient and thorough search — were outweighed by potential harm.

For these reasons, Plaintiffs' claim concerning the detention of J.W.S. fails to withstand summary judgment. Defendant Mull is entitled to qualified immunity on this claim.

## B. Seizure of Plaintiffs' Property

Plaintiffs allege that Defendant Mull contributed to an unreasonable seizure of Plaintiffs' property when, exceeding the scope of the search warrant, Defendants "removed every item from plaintiffs' residence and buildings on the property[,] destroying all property." **Pet'n ¶ 12.**[5] Plaintiffs' affidavits describe hearing sounds of property being "thrown" when Mull was in the house and relative quiet when Mull was outside the house. **Docs. 95-9; 95-10**. Plaintiff Nichols states that she "saw through the window property being thrown" and "saw Mull break the cameras outside by smashing them with a rake." **Doc. 95-9**. Plaintiff Moreland also contends that Defendant Mull took a lighter from Plaintiff Moreland's pocket and lit Mull's cigarette. **Pl.'s Ex. 9, Doc. 95-9 ¶ 3; Moreland Dep., Doc. 95-8 at 104:18–22**.

Plaintiffs allege that the events resulted in actual damages to personal property of more than $10,000. **Pet'n, Doc. 6-2 at ¶ 23.** Plaintiffs also seek $10,000 in punitive damages against Defendant Mull and Deputy Oberg on the theory that they consciously disregarded Plaintiffs' federally protected rights. *Id.* **¶ 24**.

Plaintiffs put forth photographs allegedly depicting the "property destroyed" and allege that Plaintiffs can testify as to the damage to their property. *See* **Doc. 95-9 at 9 ¶ 41; 95-11**. They also submit a list of "[i]tems," alleging certain monetary amounts represent the "cost to replace" various

---

[5] The Complaint also appears to allege that the detention of Plaintiff Moreland and Plaintiff Nichols was unlawful in its duration and as a result of the "threatening and intimidation tactics" employed by Defendant Mull and Deputy Oberg. **Pet'n ¶ 20.** But Plaintiffs do not put forth evidence that Defendant Mull was responsible for their detention, or that their detention exceeded the scope of reasonableness in view of the execution of the lawful search warrant. *See* **Doc. 95-4 at 6** (indicating that Moreland was already handcuffed before Mull came outside); *see Jenkins*, 81 F.3d at 996 (summary judgment in favor of officer was warranted on excessive search claim where the plaintiffs admitted the officer "did not physically participate in any of the search of the residence"); *Summers*, 452 U.S. at 705 ("[A] warrant to search for contraband founded on probable cause implicitly carries with it the limited authority to detain the occupants of the premises while a proper search is conducted."). This claim fails to withstand summary judgment.

16

furniture, the "front door," the "storage container damage to contents," a "shed," a "travel trailer (pop up)," and "damage to house and paint." **Doc. 95-5**. Plaintiff Moreland's testimony suggests that the monetary amounts assigned to the items were his own estimate of the value of such items — rather than the cost to repair damage, let alone damage resulting from the instant events. **Doc. 95-8 at 109:3–112:9.** In any event, even assuming the evidence has some probative value, it concerns the state that property was allegedly left in, not actions taken by any particular officer during the course of the search. Generalized assertions regarding the condition of the property after the search do not permit a finding that Defendant Mull committed a constitutional violation.

The most troubling piece of evidence supporting this claim is Plaintiff Nichols' sworn statement that she saw Mull smashing and breaking the outside cameras with a rake. **Nichols.' Aff., Pls.' Ex. 9, Doc. 95-9 at 2**. If the cameras posed no obstacle to the search, a reasonable jury could view smashing them with a rake as gratuitous and therefore outside the purpose of the warrant. When compared with Plaintiff Nichols' earlier deposition statement that she "just saw [Mull] going in and out of [the] house," **Doc. 91-2 at 114:17–18**, this statement raises potential credibility issues. However, even assuming that this testimony creates a disputed factual issue with respect to the cameras, Plaintiffs have not shown that clearly established law placed the constitutional question beyond debate. In other words, Plaintiffs do not provide authority establishing that an officer violates the Fourth Amendment by damaging or disabling exterior security cameras during the execution of a search warrant — particularly where surveillance equipment was among the items seized. *See* **Doc. 95 at 12–14; Doc. 91-23** (Search Warrant Return Inventory, including "Fully Operative Surveillance System"). Therefore, Plaintiffs' showing is insufficient to defeat qualified immunity.

Plaintiffs' observation that sounds emanating from the house suggested property was being

"thrown," is likewise insufficient to establish a Fourth Amendment violation on the part of Defendant Mull. The warrant authorized the search and seizure of drugs, drug instrumentalities and paraphernalia, and money, among other contraband incidental to the sale or trafficking of drugs. A search for such items may reasonably involve a thorough examination of cabinets, drawers, containers or other household objects that could be used to store or conceal them, especially where, as here, officers have information that drugs are hidden in "hidey holes" and buried in the yard. **Doc. 91-4 at 2; Doc. 91-7, ¶ 16;** *United States v. Ross*, 456 U.S. 798, 820–21 (1982) ("A lawful search of fixed premises generally extends to the entire area in which the object of the search may be found and is not limited by the possibility that separate acts of entry or opening may be required to complete the search."); *see, e.g., United States v. Mendoza*, 817 F.3d 695, 703 (10th Cir. 2016) (search for drugs within the lining of an ice chest was reasonable). Apart from conclusory assertions regarding the cost of repair, the record does not clarify the form or extent of the damage to the items Plaintiffs list, let alone detail how such damage is attributable to the search. ***See* Moreland Dep., Doc. 91-1, at 45:2–50:1.** The record and reasonable inferences therefrom do not give rise to a plausible inference that the officers' conduct was excessive, rather than incidental to a thorough yet lawful search.

This Court's conclusion aligns with the conclusions of other district courts within this Circuit presented with similar summary judgment records. Addressing a warrant-authorized search for "drugs, drug paraphernalia, currency, weapons, and any records containing evidence of . . . narcotics trafficking," the court in *Gonzales v. Bernalillo Cnty. Sheriff's Dep't*, found that despite allegations of broken televisions and the removal of security cameras, plaintiff had not demonstrated that "the officers caused anything other than property damage that was merely incidental to a reasonable and lawful search." No. 16-1045-MCA-GBW, 2017 WL 3208529

(D.N.M. Apr. 4, 2017), *report and recommendation adopted*, 2017 WL 3207798 (D.N.M. May 31, 2017). ("It is possible that the televisions were broken as a result of forced entry into Plaintiff's bedroom, or otherwise removed from the walls to search for compartments or safes where the items listen in the warrant could be hidden."). Another court within this district, addressing a search the plaintiff characterized as a "rampage" and involving officers "stomp[ing] and destroy[ing]" a home security system, cameras, monitor, and recording equipment, concluded that the record did not demonstrate that the search was "unnecessarily thorough to fulfill its purpose" where the search warrant concerned methamphetamine, drug paraphernalia and related items in the plaintiff's house and vehicles. *Lemmons v. Waters*, No. 11-CV-500-JED-PJC, 2014 WL 5419237, at *5–6 (N.D. Okla. Oct. 23, 2014). Plaintiffs face a similar evidentiary deficiency here: assuming Plaintiffs' allegations are true, the record does not permit an inference that the purported damage and sounds from inside the home resulted from excessive or unnecessary acts by the officers.

Plaintiffs' evidence also fails to plausibly tie any conduct of Defendant Mull to destruction that occurred within or outside the home, save for Plaintiff Nichols' observation with respect to the surveillance cameras, which, as discussed above, does not overcome qualified immunity. Although Plaintiffs' observations suggest that officers were moving or disturbing property during the search, Plaintiffs did not observe the activity inside the residence and therefore cannot testify from personal knowledge as to what specifically occurred. *See Jenkins*, 81 F.3d at 995 (claim did not overcome summary judgment where non-movants did not point to "any evidence personally linking Agent Wood to any of the damage in their home"); *Baker v. Smith*, 771 F. Supp. 1156, 1158 (D. Kan. 1991) (*Bivens* claim was subject to dismissal where the complaint did not identify "how or which defendants were responsible for the alleged destruction of [plaintiff's] property").

19

Although the taking of Plaintiff Moreland's lighter may have been unnecessary or even unjustified, the undisputed evidence establishes that the property interest at issue was minimal. **Doc. 91-19** (estimating cost to replace lighter is $3.95). Under these circumstances, the alleged deprivation was *de minimis* and does not rise to the level of a Fourth Amendment seizure. *See United States v. Jacobsen*, 466 U.S. 109, 126 (1984) (a "seizure" of property occurs only "when there is some meaningful interference with an individual's possessory interests in the property").

### III.    Plaintiffs' Unpled Claim for Conversion

Plaintiffs seek to assert a claim of conversion based on allegations that their "personal property perished when it was taken from their home and damaged" and that Defendant Mull "stole Plaintiff Moreland's lighter." **Joint Status Report, Doc. 54.** Defendant objects to the assertion of this claim on the ground that it was not pled in the Complaint and appears for the first time in the summary of Plaintiffs' claims included in the Joint Status Report. **Doc. 91 at 22–23**; *see* **Doc. 54 at 1** *cf.* **Pet'n, Doc. 6-2.** In the alternative, Mull asserts that liability is precluded by the Oklahoma Governmental Tort Claims Act's immunity for the acts of individual officers taken within the scope of their employment. **Doc. 91 at 23–24.** Plaintiffs assert Federal Rule of Civil Procedure 1's directive that the rules be construed to "secure the just, speedy, and inexpensive determination of every action" supports consideration of their claim here. **Doc. 95 at 15–16**. Plaintiffs also point to Federal Rule of Civil Procedure 16, which concerns pretrial conferences, asserting that the authority of the Court to consider pleading amendments in that context warrants consideration of their claim on Defendant's motion for summary judgment.

Outside the initial pleading period, Federal Rule of Civil Procedure 15 allows a party to amend its complaint "only with the opposing party's written consent or the court's leave," and instructs that the Court "should freely give leave when justice so requires." "At the summary judgment

stage, the proper procedure for plaintiffs to assert a new claim is to amend the complaint in accordance with Fed. R. Civ. P. 15(a)." *Gilmour v. Gates, McDonald & Co.*, 382 F.3d 1312, 1315 (11th Cir. 2004). Plaintiffs have neither amended nor attempted to amend the Complaint to add a conversion claim.

As pled, the Complaint does not assert a claim for conversion. Rather, it alleges a § 1983 claim for unreasonable seizure as to Defendant Mull and Deputy Oberg and a claim of negligence as to the dismissed municipal defendants. **Doc. 6-2**.

Plaintiffs' citation to Fed. R. Civ. P. 16 is misplaced. Rule 16 governs pretrial conferences, scheduling orders, and case management and therefore has little bearing on this issue. The rule contemplates pleading amendments, yet Plaintiffs have neither amended nor sought leave to amend the Complaint. Plaintiffs likewise offer no explanation why consideration of an unpled claim would "secure the just, speedy, and inexpensive determination" of this action. *See* Fed. R. Civ. P. 1. Although the Federal Rules permit liberal amendment, they do not authorize parties to raise new claims for the first time in response to summary judgment. *N. States Power Co. v. Fed. Transit Admin*, 358 F.3d 1050, 1057 (8th Cir. 2004). The court declines to consider Plaintiffs' unpled claim for conversion.

### CONCLUSION

Because Defendant Mull is entitled to qualified immunity on Plaintiffs' § 1983 claim for unlawful seizure, Defendant's Motion for Summary Judgment is granted.

All pending motions **[Doc. 92]** are denied as moot.

  /s/ William P. Johnson
WILLIAM P. JOHNSON
SENIOR UNITED STATES DISTRICT JUDGE

21